**EDWARDS v. KELLER et al.**

No. 12780.

Court of Civil Appeals of Texas. Dallas.

Oct. 28, 1939.

Rehearing Denied Nov. 25, 1939.

J. E. Newberry and Montgomery & Campbell, all of Dallas, for appellant.

Hughes & Monroe and P. P. Ballowe, all of Dallas, and John L. Flynn, Asst. Atty. Gen., of California, for appellees.

Jack Keller, of Dallas, per se.

BOND, Chief Justice.

Appellant, W. W. Edwards, instituted this suit against Great Republic Life Insurance Company, a corporation, to recover damages for the breach of a contract of employment. Jack Keller, receiver, was vouched into the suit to effect collection of the claim out of the estate of the corporation in the hands of the receiver. This appeal is from a judgment in favor of appellees.

The material facts are, in substance, as follows: The Great Republic Life Insurance Company was a corporation chartered under the laws of the State of California, with its principal offices in that state, with permits to do business in the States of Oklahoma and Texas. The business affairs of

the corporation were under the management and control of a board composed of eleven directors, elected within the limitations of and subject to the laws of the chartered state and the by-laws of the Company. The directors were elected annually by the stockholders of the corporation and clothed with authority to select annually the president, vice-president, secretary and treasurer, and appoint five of its members as an executive committee. The by-laws, material here, dealing with the duties of the president, provide: "Subject to the approval of the executive committee, the president shall appoint and fix the compensation or salary of all clerks or other employes not appointed by the board of directors, and may dismiss such clerks and employes", and "He shall countersign all checks, sign certificates of stock, sign policies of insurance, and sign such contracts and other instruments in writing as are first approved by the board of directors or the executive committee". The by-laws further provide that the executive committee shall keep minutes of its proceedings and, "within the limitations of and subject to the laws of the state and the by-laws of the company, and the rules, orders, contracts, resolutions, and approval of the board of directors, have control of the moneys and other property of the company, of the investment of its funds, and all purchases and loans". At the time of the institution of this suit, however, the affairs of the corporation, since May, 1934, were in the hands of a conservator, duly appointed, qualified and acting, by order of a Superior Court of California.

In 1932, appellant, W. W. Edwards, president of Oklahoma Southern Life Insurance Company, entered into negotiations with the president of the Great Republic Life Insurance Company, resulting in a merger of the two companies, and, soon thereafter, on October 3, 1932, the contract involved in suit was entered into by Edwards and T. J. McComb, president of the Great Republic Life Insurance Company. The contract, in writing, cites the employment of Edwards, at a salary of $1,000 per month for a period of two years from and after October 1, 1932 "in such capacity as the Great Republic Life Insurance Company may from time to time direct for the period |of two (2) years * * *". In pursuance of such agreement, Edwards, immediately after the contract was executed, moved from Oklahoma, where the contract was entered into, to the California offices of the Insurance Company and there entered upon such duties as the Company directed, and received the monthly salary of $1,000, to December 1, 1933, when the executive committee, with the approval of the board of directors (Edwards being a member of the committee, as well as a director), reduced the salary of Edwards to $500 per month. Appellant continued in the service of the company, receiving, under protest, the monthly salary of $500, until May 15, 1934, when, at the instance of the Conservator of the State of California, his employment was terminated. This suit was brought to recover the $500 per month remaining unpaid on the contract, from December 1, 1933, to May 15, 1934; and, $1,000 per month from May 15, 1934, to October 1, 1934, a total of $7,250, with legal interest and costs of suit.

The record discloses that neither the executive committee nor the board of directors of the corporation expressly authorized the execution of the contract involved in this suit; and, there is nothing in the minutes of the proceedings of either of the boards showing that the contract made by the president of the corporation was ever approved or ratified by the executive committee or the board of directors. The contract, in all of its terms, was never presented or called to the attention of either board; and, the most that can be said is, that some five or six members of the board knew of the employment of Edwards by the month and that the salary was being paid to appellant out of funds belonging to the corporation.

 However, be that as it may, assuming for the purpose here that the directors did know, or that they even participated in the making of the contract, extending the employment of Edwards over the period of two years, we think such a contract was void, because of the lack of power in the directors and president to make it. The statute of this State (Art. 1323, R.S., Vernon's Ann.Civ.St. art. 1323) expressly provides for the election of directors of a corporation annually, at the annual meeting of the stockholders, and, in the absence of a contrary showing, it must be assumed that the statutes of Oklahoma and California are the same as those of Texas. The by-laws of defendant also have similar provisions. Thus, by means of such annual election, the stockholders of the corporation are clothed with the ultimate power of direction in the administration of its affairs;

they are the sovereigns of the corporation, and, where the terms of a contract extend over the tenure of the executive officers, thereby taking from the incoming board of directors, officers, and stockholders of the corporation, the power of directing the corporate affairs, denying to them the ultimate and final power in such matters, such contracts are void. Neither the board of directors nor the president of the corporation can exceed the limitations placed upon them by the laws affecting the corporation. The terms of the statute and the by-laws of the corporation are necessarily read into every contract made on behalf of the corporation; therefore, appellant, knowing the limitations of the corporate officers, and that the work to be performed by him was "in such capacity as the corporation from time to time directs", and at a salary of $12,000 a year, extending over a period of two years, is in no position to urge that the making of such contract came within the powers of such corporate officers. The contract would deprive the stockholders and successive directors, within such period of time, of the power to exercise the administration of corporate affairs, to dismiss such employe, reduce his salary, and otherwise control his employment. We are of the opinion, therefore, that the contract was contrary to public policy. So, if it can be said from the record that the directors knew that its president had entered into the contract at the time it was made, or that the board had thereafter ratified the same by express orders, we think their act in so doing would not and did not breathe life into the contract void ab initio. It is true that neither a corporation nor an individual can accept services or property under an ultra vires contract, receive all its benefits, and then refuse to pay therefor; but, such is not the case at bar. The services rendered by appellant were paid for by the corporation, and, the contract being void, it was clearly within the power of the board of directors to change, alter or terminate the contract and dismiss appellant at will. Limitations placed on the executive officers of the corporation by the laws of the state and by-laws of the corporation forbid a contract as involved here.

In Beaton v. Continental Southland Savings & Loan Ass'n et al., Tex.Civ.App., 101 S.W.2d 905, 909, a breach of contract of employment extending over a period of ten years was involved. In the course of the opinion, this Court said: "In its last analysis, the shareholders, and not the board of directors, are the sovereigns of the instant building and loan association. If the board of directors should prescribe that a certain administrative course should be pursued for a period of ten years, such act would be void. Why? Because it takes from the incoming board of directors, stamped with the approval of the shareholders, the power given it both by statute and by the Continental by-laws. But, over and above this, it is void, for the reason that, for the period of ten years, it denies to the shareholders the ultimate and final power in such matters, the right to elect the board of directors to carry out their administrative ideas."

So, also, in Denton Milling Co. v. Blewett, Tex.Civ.App., 254 S.W. 236, 238, the directors of the Milling Company entered into a contract with Blewett, to be manager of the corporation for a period of five years, at a stipulated salary per annum. The contract was declared void by the Texarkana Court of Appeals (writ of error refused by the Supreme Court), and, in the opinion, the court said:

"Each new board is responsible to the stockholders for the manner in which the business is conducted, and should, in the nature of things, be free to select its own agents. If one board of directors may contract with a manager for employment extending over a term of five years, they can materially handicap the freedom and power of their successors in the management of the business of the corporation. * * * It is manifest that in providing for a change in the directorate once every year it was intended to reserve to the stockholders the power to also control all those important agents upon whose efficiency the business success of the corporation depended. * * * The stockholders could do little at their annual meetings toward removing an inefficient management of the affairs of the concern if so important an official as the manager could not be changed when a change was needed. The following authorities, we think, sustain this conclusion: Llewellyn v. Aberdeen Brewing Co., 65 Wash. 319, 118 P. 30, Ann.Cas.1913B, 667, and cases cited in notes; Beers v. New York Life Ins. Co., 66 Hun, 75, 20 N.Y.S. 788."

In the instant case, there is no dispute that appellant rendered services to the corporation and received the compensation provided in the contract, until the compensation was reduced by the board of di-

rectors on December 1, 1933, and thereafter received the reduced compensation until the corporation and all of its affairs were placed in the hands of the Conservator, in California, and then his services were terminated by order of the Conservator on May 15, 1934. We are of the opinion, therefore, that the contract, being contrary to the public policy of this and the sister states of Oklahoma and California, and contrary to the corporation's policy in administering its affairs, the directors were authorized to reduce appellant's compensation, and that the Conservator, successor to the corporation, was empowered to terminate the contract.

Furthermore, the record discloses that, in May, 1934, the State of California, by the Insurance Commissioner of that state, instituted suit in a Superior Court of California, against the Great Republic Life Insurance Company, and, according to the laws of that state, caused to be appointed a Conservator to take over the corporation and all its assets, and enjoined it and all its officers, agents and employes from further transacting any corporate affairs. In July, 1934, appellant, W. W. Edwards, by petition duly verified, intervened in the conservatorship suit, seeking to establish his claim against the corporation for compensation, under the contract; and, in addition thereto, sought to subject the assets of the corporation, in the hands of the conservator, to the payment thereof. Appellant alleged that he was a creditor and salaried officer of the Great Republic Life Insurance Company, a corporation; that it was indebted to him under the contract of employment.

"That copy of said written contract is attached hereto, marked Exhibit "A" and by such reference made a part hereof. That the said sum of Four Thousand Two Hundred and Fifty ($4,250.00) Dollars remains wholly due, owing and unpaid.

"II. That within four years last past and prior to the filing of this petition, the defendant, Great Republic Life Insurance Co. a corporation, became indebted to petitioner on an open book account for services rendered on behalf of the defendant in the sum of Four Thousand Two Hundred and Fifty ($4,250.00) Dollars. That no part of said sum of $4,250.00 has ever been paid. That the said sum of $4,250.00 remains wholly due, owing and unpaid.

"III. That within two years last past defendant became indebted to your petitioner in the sum of Four Thousand Two Hundred and Fifty ($4,250.00) Dollars for services rendered and performed by petitioner for and on behalf of the defendant, at the special instance and request of said defendant. That the reasonable value of said services so performed and rendered was and is the sum of $4,250.00. That no part of said sum of $4,250.00 has ever been paid. That the said sum of $4,250.00 remains wholly due, owing and unpaid."

The issues raised in appellant's petition were categorically denied by the answers of the Conservator, especially responding for the corporation and in behalf of the state. On hearing before the court, judgment was entered, denying appellant's plea of intervention. No appeal was taken from the action of the court; the judgment was final.

In the instant suit, as in the case in the California court, Edwards is the complaining party; the Insurance Company is the primary defendant, and the cause of action is based on his claim for compensation, arising out of the contract of employment, payable out of corporate funds in the hands of a fiduciary of the defendant. The final adjudication of the suit in California, in our opinion, is res adjudicata in the present suit; and, under the "Full Faith and Credit Act" of Congress, the Federal Constitution (Art. IV, Sec. 1, U.S.Const.; U.S.C.A.; U.S.C.A. Title 28, Sec. 687), the judgment of the foreign jurisdiction must be given force and effect in this proceeding.

The Act of Congress requires that a judgment rendered in one jurisdiction, between the same parties on the same cause of action, be given full recognition and binding effect in another jurisdiction. The suit in California, according to the above petition, clearly sought to establish a debt, a liability, against the corporation, and the suit here has the same purpose; the only difference in the two suits being that, if and when the claim for compensation was finally determined by a court of competent jurisdiction, same be directed, in California, paid out of the assets of the corporation, in the hands of the conservator; and, in Texas, out of the funds in the hands of the receiver. In both cases, relief is sought to recover the claim for compensation, based on the same contract of employment, to be paid from the assets of the corporation. The fiduciary in either case is not personally liable, but in each,

the suit was directed against the corporation.

In view of the Act of Congress, supra, the judgment of the California court, denying liability on the contract here sued upon, as shown by the attested records of the court of the domiciliary state of plaintiff and defendant, makes the judgment of that court final and binding on Texas courts.

For the reasons above stated, the judgment of the court below is affirmed.